## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUNIE THELUS, | ) | |
| | ) | Case No. _____ |
| Petitioner, | ) | |
| | ) | |
| | **)** | **PETITION FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS AND** |
| | ) | **COMPLAINT FOR** |
| David Wesling,  Acting Director of Massachusetts, | ) | **DECLARATORY AND** |
| Maine, Vermont, Connecticut, Rhode Island, | ) | **INJUNCTIVE RELIEF** |
| New Hampshire ICE Field Office, | ) | |
| U.S. Immigration and Customs Enforcement; | ) | |
| Todd Lyons, Acting Director of U.S. Immigration | ) | |
| and Customs Enforcement | ) | |
| Kristi Noem, Secretary of the U.S. Department of | ) | |
| Homeland Security; and | ) | |
| Pamela Bondi; Attorney General of the | ) | |
| United States. | **)** | |
| | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

## <u>INTRODUCTION</u>

1.      Petitioner Junie Thelus ("Ms. Thelus") is a Haitian citizen and national who entered the United States as an applicant for admission on or around June 10, 2024, along with her husband and two minor children. ICE detained Ms. Thelus on or around December 12, 2025, and she was subsequently transferred to the Cumberland County Jail. Upon information and belief, the Cumberland County Jail is no longer detaining ICE detainees and Ms. Thelus has been transferred out of the facility. Ms. Thelus faces an imminent transfer to an unknown facility that will be hundreds, if not thousands, of miles from her *pro bono* immigration attorneys and her husband and two minor children.

2.      Ms. Thelus has significant mental health concerns, having been diagnosed with

1

schizoaffective disorder, depressive type and generalized anxiety disorder, making skilled legal representation in her case even more important in order to safeguard her constitutional and statutory rights.

3.      This petition for a writ of habeas corpus is brought on an emergency basis due to imminent transfer. It seeks to, first, enjoin the transfer to any detention facility outside of the New England area, and second, request Petitioner's immediate release or a substantial modification of Petitioner's confinement.

## JURISDICTION

4.      This action arises under the Constitution of the Untied States, the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*, and the Administrative Procedure Act.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 2201 (declaratory judgement).

6.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. §§ 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., and the All Writs Act, 28 U.S.C. §§ 1651.

7.      Seeking the Court's intervention through a habeas petition is appropriate in these circumstances. The First Circuit has held, "Section 2241 provides a remedy for a federal prisoner who contests the conditions of his confinement." *Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977). Further, "[i]f the conditions of incarceration raise Eighth Amendment concerns, habeas corpus is available." *United States v. DeLeon*, 444 F.3d 41, 59 (1st Cir. 2006). In *Gomes v. U.S. Department of Homeland Security, Acting Secretary*, the U.S. District Court for the

District of New Hampshire ordered "immediate release or placement in community-based alternatives to detention such as conditional release, with appropriate public health measures." No. 20-cv-453, 2020 WL 3258627, at *3 (D.N.H. June 16, 2020). Similarly, In *Gonzalez-Fuentes v. Molina*, the First Circuit considered a situation analogous to the present one, in which inmates brought a habeas claim seeking release from prison to home confinement and electronic supervision. 607 F.3d 864, 873 (1st Cir. 2010). The court found that "habeas corpus is [the] remedy" for a prisoner seeking what "can fairly be described as a quantum change in the level of custody" such as "'outright freedom'" or "'freedom subject to the limited reporting and financial constraints of bond or parole or probation.'" *Id.* (quoting with approval *Graham v. Broglin,* 922 F.2d 379, 381 (7th Cir. 1991)).

## **VENUE**

8.    Venue is proper because Petitioner resided in Massachusetts prior to her detention, was arrested in Massachusetts, has pending criminal charges in the Chicopee District Court in Massachusetts, and is in removal proceedings in the Chelmsford, Massachusetts Immigration Court. Further, upon information and belief, Ms. Thelus has been transferred out of the Cumberland County Jail on January 22, 2026 and is currently being held in Massachusetts. This additionally comports with ICE's prior practice of transfer in the New England region of first transferring the individual to ICE ERO Burlington before further transfer out of state.

9.    Additionally, the Chicopee District Court, by virtue of the pending proceedings, also has custody over Ms. Thelus. "Custody" for purposes of a habeas petition "is not limited to physical custody." *Devitri v. Cronen*, 290 F.Supp. 3d 86 (D. Mass. 2017).

## **REQUIREMENTS OF 28 U.S.C. § 2243**

10.    The Court must grant the petition for writ of habeas corpus or issue an order to

show cause ("OSC") to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

12.     Petitioner, Ms. Thelus, is a noncitizen in removal proceedings. As of January 22, 2026, she was detained at the Cumberland County Jail, but has since been transferred out of the Cumberland County Jail. On information and belief, she is currently being held in the state of Massachusetts and is in the custody, and under the direct control, of Respondents and their agents.

13.     Respondent David Wesling is sued in his official capacity as the New England Field Office Director for U.S. Immigration and Customs Enforcement located in Burlington, Massachusetts. Respondent Wesling is a legal custodian of Ms. Thelus and has authority to release her.

14.     Respondent Todd Lyons is named in his official capacity as the Acting Director for U.S. Immigration and Customs Enforcement. He is responsible for the administration and enforcement to the immigration laws of the United States and is legally responsible for pursuing any effort to remove Petitioner, and as such is a legal custodian of Petitioner.

15.     Respondent Kristi Noem is sued in her official capacity as the U.S. Secretary of Homeland Security. In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees U.S. Immigration and Customs Enforcement the component agency responsible for Ms. Thelus's detention and custody. Respondent Noem is a legal custodian of Ms. Thelus.

16.     Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Ms. Thelus.

## STATEMENT OF FACTS

### A. Background

17.     Ms. Thelus is a 42-year-old citizen and national of Haiti. She fled to the United States in 2024 with her husband and two minor children and has resided in the United States since then with them. She entered the United States on or around June 10, 2024 and was paroled into the United States pursuant to INA Section 212(d)(5)(A). A true and correct copy of Ms. Thelus's I-94 reflecting the designation "DT," meaning humanitarian parole, is attached hereto as Exhibit 1.

18.     DHS also served Ms. Thelus with a Notice to Appear dated June 10, 2024, giving her the opportunity to apply for asylum through INA Section 240 removal proceedings in the Immigration Court. A true and correct copy of the Notice to Appear is attached hereto as Exhibit 2.

19.     On or around November 25, 2025, clinicians at MiraVista Behavioral Health

Center diagnosed Ms. Thelus with schizoaffective disorder, depressive type, and generalized anxiety disorder, and prescribed her antipsychotic and antianxiety medication. Documentation of these diagnoses are attached hereto as Exhibit 3. Her conditions are so obvious that a lay person would easily recognize the need for medical attention. For example, Ms. Thelus is unable to understand how to use the phone in her unit to contact her husband and children and, as a result, has had no communication with them since December 12, 2025. Despite repeated requests from Ms. Thelus's immigration counsel to facilitate these calls, to counsel's knowledge from communication with Cumberland officers, they have not yet happened.

20.    ICE detained Ms. Thelus on or around December 12, 2025 and transferred her to the Cumberland County Jail, where she remained until January 22, 2026.

21.    Ms. Thelus is currently in immigration removal proceedings in the Chelmsford Immigration Court. On or about January 2, 2026, the Committee for Public Counsel Services ("CPCS") accepted Ms. Thelus's case for pro bon representation. Ms. Thelus has met with her pro bono counsel on several occasions and her pro bono counsel was scheduled to visit her in person the day of the filing of the instant motion. Her pro bono counsel has already begun seeking a psychiatric evaluator for her immigration case due to her diagnosis of schizoaffective disorder and was about to file a motion for evaluation of judicial competency with the Chelmsford Immigration Court.

22.    Ms. Thelus has a pending criminal matter at the Chicopee District Court with an upcoming hearing on January 29, 2026.

23.    Ms. Thelus is at serious risk of persecution and torture if she is returned to Haiti.

24.    The Chelmsford Immigration Court has a master calendar hearing scheduled on May 21, 2026.

**B.  ICE's transfer of Ms. Thelus**

25.    On January 22, 2026, Ms. Thelus was transferred out of the Cumberland County

Jail when the facility confirmed it was no longer housing ICE detainees. Confirmation of this is

attached hereto as Exhibit 4. Upon information and belief, Ms. Thelus is currently being held in

Massachusetts. This additionally comports with ICE's prior practice of transfer in the New

England region of first transferring the individual to ICE ERO Burlington before further transfer

out of state

26.    Pursuant to binding ICE policy, ICE must follow specific procedures when

determining whether to transfer an individual under certain circumstances. ICE Policy Number

11022.1, *Detainee Transfers*, states that ICE "will not transfer a detainee when there is

documentation to support" that the individual has family or an attorney of record within the area

(defined as the "area of responsibility," or AOR), the individual has pending or on-going

removal proceedings within the area, or the individual has been granted bond or has been

scheduled for a bond hearing. If any one of these factors are present, an individual may be

transferred only if "a transfer is deemed necessary" by a Field Office Director ("FOD") or a

designee, and specific protocols are followed. Namely, "the transfer must be approved at the

Assistant Field Office Director level or higher, and the reasons for the transfer must be

documented in the detainee's A-File." In all transfer determinations, ICE officers must "conduct

a thorough review of the most current information available." The purpose of the policy is to

"minimize, to the extent possible, detainee transfers outside the AOR.

27.    Upon information and belief, ICE routinely fails to comply with Directive

11022.1 by transferring noncitizens out of state without timely notifying their retained

counsel. In *Ozturk v. Trump et al.*, for example, ICE transferred the petitioner from

Massachusetts to New Hampshire and then to Louisiana without informing her attorney. *Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 WL 1009445, at *2 (D. Mass. Apr. 4, 2025). In *Ortiz v. Orange County*, the court recognized instances where noncitizens were transferred out of state without notice to retained counsel. *Ortiz v. Orange Cnty.*, 2024 WL 113705, at *4 (S.D.N.Y. Jan. 10, 2024). Similarly, in an October 2024 letter, the American Bar Association urged ICE to notify attorneys when their clients are transferred, citing eleven instances in which such transfers occurred without notice to counsel. American Bar Association, *Letter from William R. Bay, President, to Patrick J. Lechleitner, Acting Director, U.S. Immigration and Customs Enforcement* (Oct. 23, 2024),

https://www.americanbar.org/content/dam/aba/administrative/government_affairs_office/imm-omdc-2d-transfer-letter-23-oct-2024.pdf.

28.    ICE retains authority over immigration detention, including the decision to detain an individual and where to detain them. At the same time, ICE also serves as the prosecutor representing the government in removal proceedings against that individual. ICE's decision to transfer Ms. Thelus outside of the Cumberland County Jail away from her attorneys and resources also may subject her immigration proceedings to a different circuit's law that she and her attorney may be unfamiliar with. Ms. Thelus's immigration proceedings are currently venued in the Chelmsford Immigration Court, which oversees the cases of individuals detained at Cumberland. Upon information and belief, ICE will likely, as it does in many cases, request that venue be transferred in Ms. Thelus's case from the Chelmsford Immigration Court, which is subject to First Circuit law, to a court outside of the First Circuit, likely the Fifth Circuit.

29.    As prosecutor in Ms. Thelus's case, ICE's unilateral ability to transfer Ms. Thelus to a new jurisdiction, which will substantially negatively impact her representation by counsel,

ability to obtain evidence to support her asylum claim, prolong her detention, result in a new judge, court, and circuit, is unfair, arbitrary, and violates Ms. Thelus's due process rights.

**C. ICE's transfer will significantly impact Ms. Thelus's access to counsel and ability to meaningfully participate in her removal proceedings, particularly given her mental illness**

30.     Transferring Ms. Thelus to a detention center out of state will impede her access to effective assistance of counsel, particularly given her serious mental illness.

31.     In-person meetings between Ms. Thelus and her attorneys are necessary for all aspects of representation in her removal proceedings, including seeking immigration relief. This is particularly true given her mental health diagnoses. In fact, Ms. Thelus's immigration attorneys had a scheduled visit with Ms. Thelus on the morning of January 23, the day of the filing of the instant petition. Such in-person meetings are necessary for interviewing her about past harm she has suffered; preparing her legal claims and eligibility for relief; counseling her as to legal options and developments in her case; obtaining signatures on immigration relief applications and release forms when seeking client records from outside agencies; accessing a psychiatric evaluation; and preparing her to testify in court.

32.     Because of the highly sensitive nature of these conversations, in-person meetings are necessary to ensure Ms. Thelus can openly communicate with counsel. However, Ms. Thelus's pro bono attorneys from Committee for Public Counsel Services operate on a state-funded grant and do not have the capacity or resources to travel potentially a thousands miles or more to an immigration detention center far outside of Massachusetts to meet with her in person or present her case at the assigned immigration court.

33.     Further, Ms. Thelus's transfer to a new detention center will likely impede her ability to effectively communicate with her counsel even remotely. Several organizations have

reported on the substantial restrictions on telephone access and virtual meetings within

immigrations detention centers and the long delays in sending and receiving legal mail. *See*

Michael Kaufman, Detention, Due Process, and the Right to Counsel in Removal Proceedings, 4

Stan. J. C.R. & C.L. 113, 127 (2008) ("The practical constraints caused by detention, including

the remote location of detention facilities, ICE transfer policies, [and] detention facility rules that

limit visitations and phone calls . . . create impediments to retaining counsel [and] frustrate

detainees' ability to prepare their cases").

34.     Ms. Thelus's transfer may also impact her attorney's ability to provide effective

assistance of counsel by subjecting her proceedings to a different circuit's law. Her proceedings

are currently in the Chelmsford Immigration Court within the First Circuit. If transferred, her

proceedings will be subject to another Circuit's law, likely the Fifth Circuit, based on where

ICE's largest detention centers are located. *See* Immigration Detention Statistics: A

Retrospective and a Look Forward (Feb. 21, 2025), Transactional Records Access Clearinghouse

(TRAC), Syracuse University, publicly available at

https://tracreports.org/reports/753/#:~:text=Almost%20one%20in%20twenty%20individuals,mor

e%20than%201%2C500%20adults%20each ("Fourteen of the twenty largest immigration

detention centers in the United States are located in Mississippi, Louisiana, and Texas"). This

change in law may harm Ms. Thelus's case because her attorneys are already actively preparing

her case under First Circuit law. Arbitrary transfers by ICE impermissibly permit ICE to forum

shop to obtain more favorable law and outcomes.

## **LEGAL FRAMEWORK**

35.     Under 28 U.S.C. § 2243, courts may issue "swift and imperative remedy in all

cases of illegal restraint or confinement" through the instant habeas corpus petition. *Fay v. Noia*,

372 U.S. 391, 400 (1963) (emphasis added).

36.    It is well-established that if noncitizens are detained during their removal proceedings, that detention must not violate their constitutional and statutory rights. *See Zadvydas v. Davis,* 533 U.S. 678, 690 (2001); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 36–38 (1st Cir. 2021). Courts have held that when ICE detains an individual, it assumes the responsibility of ensuring that their constitutional rights are upheld. *See, e.g.*, *Doe et al. v. DHS*, No. 3:24-cv-00259-SLH-PLD, ECF 76 (W.D. Pa. Jan. 31, 2025).

37.    These rights include those protected under the Fifth Amendment Right to Due Process, First Amendment, Immigration and Nationality Act ("INA"), and Administrative Procedure Act ("APA").

38.    The arbitrary decision to transfer Ms. Thelus outside of jurisdiction where her immigration counsel, family, and other supporting resources are located violates these constitutional and statutory rights. Under 28 U.S.C. § 2243, this Court is entitled to vindicate these rights and grant an appropriate remedy.

**A. Ms. Thelus's continued detention and transfer impedes her rights under the Due Process Clause of the Fifth Amendment, the First Amendment, and the INA**

39.    Under the Due Process Clause of the Fifth Amendment, the First Amendment, and the Immigration and Nationality Act, Ms. Thelus is entitled to be represented by counsel of her choice during his removal proceedings.

40.    "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Mekhoukh v. Ashcroft*, 358 F.3d 118, 128 (1st Cir. 2004) (quoting *Morales v. INS*, 208 F.3d 323, 327 n.1 (1st Cir. 2000)). Among the rights that due process safeguards is a noncitizen's right to effective assistance of counsel. *See Lozada v. INS*, 857 F.2d 10, 13 (1st Cir. 1988) (explaining that "[i]neffective assistance of counsel in a

deportation proceeding is a denial of due process . . . if the proceeding was so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting his case" (internal quotation marks and citation omitted)); *Essen v. Gonzales*, 240 F. App'x 873, 875 (1st Cir. 2007) ("We have recognized that, under certain circumstances, the abridgement of access to counsel in removal proceedings may amount to a denial of due process."); *Guerrero-Santana v. Gonzales,* 499 F.3d 90, 93 (1st Cir. 2007) (concluding that ineffective assistance of counsel may constitute a denial of due process if the proceeding is rendered fundamentally unfair).

41.     Recognizing that due process safeguards meaningful access to counsel, Congress codified the right to counsel in the INA at 8 U.S.C. § 1362. *See, e.g.*, *Hernandez Lara v. Barr*, 962 F.3d 45, 54 (1st Cir. 2020) ("The statutory right to counsel is a fundamental procedural protection worthy of particular vigilance."); *Garcia v. Sessions*, 856 F.3d 27, 51 (1st Cir. 2017) (Stahl, J., dissenting) (recognizing that the INA guarantees the right to counsel and other due process protections); *see also Ardestani v. INS*, 502 U.S. 129, 138 (1991) ("We are mindful that the complexity of immigration procedures, and the enormity of the interests at stake, make legal representation in deportation proceedings especially important."). That provision provides that a noncitizen "shall have the privilege of being represented . . .  by such counsel . . . *as he shall choose*." 8 U.S.C. § 1362 (emphasis added). This right is "an integral part of the procedural due process to which the [noncitizen] is entitled." *Saakian v. INS*, 252 F.3d 21, 24 (1st Cir. 2001) (citing *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993)).

42.     Additionally, the Fifth Amendment's Due Process Clause requires release when the duty of care for a detainee's medical needs are unmet. The government's affirmative duty arises "from the limitation which it has imposed on [the detainee's] freedom to act on his own behalf." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 200 (1989). This duty

necessarily includes the obligation to provide for a detained person's medical needs: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). An individual who, like Petitioner, is confined for alleged violations of immigration law is entitled to protections greater than are afforded by the Eighth Amendment to those incarcerated for criminal offenses. "When the Government detains a person for the violation of an immigration law, the person is a civil detainee, even if he has a prior criminal conviction . . . as a civil detainee, [Petitioner] is entitled to more considerate treatment than a criminal detainee, whose conditions of confinement are designed to punish." *Sallaj v. U.S. Immig'n and Customs Enforcement,* 2020 WL 1975819, at *3 (D.R.I. Apr. 24, 2020). *See also Gomes v. US Dep't Homeland Security,* 460 F.Supp.3d 132, 145 (D.MA 2020) ("The duties owed under the Due Process Clause to those who are detained civilly are *at least as* extensive as those owed under the Eighth Amendment to convicted inmates."); *Youngberg v. Romero*, 457 U.S. at 307, 315 (1982) ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed —who may not be punished at all—in unsafe conditions."); *Bell v. Wolfish*, 441 U.S. 520, 545 (pretrial detainees "retain at least those constitutional rights that ... are enjoyed by convicted prisoners").

43.     "[C]ivil immigration detainees can establish a due process violation by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Sallaj, supra*, at *3 (D.R.I. Apr. 24, 2020) (quoting *Basank v. Decker,* 449 F.Supp.3d 205, 214, (S.D.N.Y. 2020)). *See also Yanes v. Martin,* 464 F.Supp.3d 467 (D.R.I. 2020) (same). For a civil detainee, a medical condition of sufficient magnitude to be protected by the Due Process Clause entails "an unmet serious

medical need 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Gomes, supra,* 460 F.Supp.3d at 145 (quoting *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 74 (1st Cir. 2016))

44.    Petitioner has satisfied the first requirement by having a diagnosis of schizoaffective disorder of which the Respondents are aware or should be aware. Respondents have also failed to take appropriate action to address her medical condition, including by failing to facilitate any communication with her family. It is uncertain whether Ms. Thelus is currently on any medication despite her prescriptions for antipsychotic or antianxiety medications as obtaining such medical records from the facility require a HIPAA release that her immigration counsel have not yet been able to obtain.

45.    Moreover, the First Amendment protects an individual's ability to hire and consult with an attorney. *See United Mine Workers of Am. V. Illinois State Bar Ass'n,* 389 U.S. 217, 221–22 (1967) ("[T]he freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist . . . in the assertion of their legal rights."); *Nolan v. Scafati,* 430 F.2d 548, 551 (1st Cir. 1970) (asserting that a habeas petition can vindicate a constitutional right like the First Amendment "corollary right to obtain assistance."); *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000) ("[T]he First Amendment protects the right of an individual or group to consult with an attorney on any legal matter.").

46.    ICE's imminent transfer of Ms. Thelus outside of Massachusetts will directly and negatively impact his right and access to his counsel.

**B.  The APA required that Ms. Thelus's detention and transfer comply with its own policies, in this case, Policy Numbers 11022.1 and 11064.4**

47.    Under the APA, Ms. Thelus is protected from being "adversely affected or aggrieved by agency action" and is "entitled to judicial review." 5 U.S.C. § 702.

48.    Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), and related cases, an agency and agency officials are required to follow their own regulation and policies. *Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008) ("An agency has an obligation to abide by its own regulations."); *see Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). *Accardi*'s holding that agencies must follow their own guidelines applies with particular force where "the rights of individuals are affected," as is the case here. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *see also Jimenez v. Cronen*, 317 F. Supp. 3d 626, 638–39 (D. Mass. 2018) ("When regulations are promulgated to protect a fundamental right derived from the Constitution or a federal statute, . . . the Due Process Clause requires federal agencies to follow them[.]" (internal quotation marks and citations omitted)).

49.    An agency's unexplained failure to follow its own rules constitutes "arbitrary" and "capricious" conduct in violation of the APA.  5 U.S.C. § 706(2)(A); *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).

50.    Courts in the First Circuit have held that the *Accardi* doctrine applies to internal agency policies. *See, e.g.*, *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2023 WL 3466327, at *15 (D. Mass. May 12, 2023) (allowing an APA claim to proceed when plaintiff sued for violation of, inter alia, a USCIS Policy Manual); *Lobsters, Inc. v. Evans*, 346 F. Supp. 2d 340, 348 (D. Mass. 2004) (finding an abuse of discretion when an ALJ deviated from agency policy without explanation and stating "[i]t is settled law that an agency ordinarily must follow its own policies

and procedures and may depart therefrom only with reasoned explanation.").

51.    ICE has failed to comply with its own binding policy, ICE Policy Number 11022.1, which governs the transfer of noncitizens detained in ICE custody. Here, Ms. Thelus exhibits many of the factors that Policy 11022.1 states ICE should consider not transferring her out-of-state. Her attorneys are in the Boston area, she has pending removal proceedings in the Chelmsford Immigration Court, and the resources supporting her case are in Massachusetts. Prior to her arrest by ICE, Ms. Thelus had been living in Massachusetts, where her personal contacts and supporters remain.

52.    ICE has additionally failed to comply with ICE Directive 11064.4, *Detention and Removal of Alien Parents and Legal Guardians of Minor Children*, by transferring Ms. Thelus. The directive states that if the "Covered Individual's minor child(ren) . . . are within the AOR of initial apprehension or detention placement, the Detained Parent Field POCs must refrain from subsequently transferring the [noncitizen] outside of the AOR." Ms. Thelus has already been detained two hours away from her two minor children. Transfer out of the New England area will further infringe on her parental rights and violates ICE's own directive.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of Due Process Clause of the Fifth Amendment**

53.    Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

54.    The conditions of Ms. Thelus's detention are in violation of her constitutional rights, as protected by the Due Process Clause of the Fifth Amendment.

55.    Noncitizens are entitled to due process of law in their immigration proceedings. *Mekhoukh v. Ashcroft*, 358 F.3d 118, 128 (1st Cir. 2004) (quoting *Morales v. INS*, 208 F.3d 323,

327 n.1 (1st Cir. 2000)). Arising from this general due process right is the right to effective assistance of counsel. *See Lozada v. INS,* 857 F.2d 10, 13 (1st Cir. 1988); *Essen v. Gonzales*, 240 F. App'x 873, 875 (1st Cir. 2007); *Guerrero-Santana v. Gonzales,* 499 F.3d 90, 93 (1st Cir. 2007).

56.    Respondents' practice of detaining and transferring Ms. Thelus out of state violates her Fifth Amendment right because it would effectively restrict her from communicating with *pro bono* counsel in Massachusetts. Ms. Thelus would not be able to have face-to-face meeting with counsel or psychiatric evaluators, and she would encounter an array of obstacles in contacting her counsel remotely from an out-of-state facility, particularly given her severe mental health concerns.

57.    Transferring Ms. Thelus would also significantly impede, if not render impossible, her ability to participate in her pending criminal proceedings in the Chicopee District Court. *Doe v. U.S. Department of Homeland Security*, 3:24-cv-259 (W.D. Pa. Mar. 28, 2025) ("the inability of detainees to attend their criminal proceedings deprives them of their constitutional right to a defense attorney, and their ability to be heard in court."). The timing is particularly egregious as Petitioner has an upcoming hearing in her criminal matter on January 29, 2026.

58.    For these reasons, Ms. Thelus's transfer would violate the Due Process Clause of the Fifth Amendment.

## COUNT TWO
### Violation of the Immigration and Nationality Act

59.    Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

60.    The INA guarantees individuals in removal proceedings are entitled to due

process, which includes the right to counsel of their choosing. 8 U.S.C. §§ 1362, 1229a(b)(4)(A); *see, e.g.*, *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 13 (1st Cir. 2007); *see also Lozada v. INS*, 857 F.2d 10, 13 (1st Cir. 1988). The INA also provides that immigrants shall have a reasonable opportunity to present evidence on their own behalf. 8 U.S.C. 1229a(b)(4)(B).

61.    Respondents' continued detention and potential transfer out of the New England area would violate her statutory right to counsel by preventing her from continuing to communicate, including in-person and remotely, effectively with legal representatives.

62.    Respondents' conduct also violates Ms. Thelus's statutory right to present evidence by restricting her ability to collect evidence and communicate with potential witnesses and psychiatric evaluators, including in person, as is necessary for them to meaningfully prepare and present her legal case.

63.    For these reasons, Ms. Thelus will suffer injury as a proximate result of Respondents' violation of 8 U.S.C. § 1229a(b)(4)(A), 8 U.S.C. § 1229a(b)(4)(B), and 8 U.S.C. § 1362 through the practice of transferring her out-of-state.

### COUNT THREE
### Violation of the First Amendment

64.    Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

65.    The First Amendment protects an individual's ability to hire and consult with an attorney. *See United Mine Workers of Am. v. Illinois State Bar Ass'n,* 389 U.S. 217, 221–22 (1967); *Nolan v. Scafati,* 430 F.2d 548, 551 (1st Cir. 1970); *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000).

66.    Under the First Amendment, detained individuals also "have the constitutional

right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). *See also ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 30 (D. Mass. 2020).

67.    Respondents' continued detention and transfer would severely restrict her ability to consult with an attorney. Without an attorney and in a state and jurisdiction she is unfamiliar with, Ms. Thelus would also not have a meaningful opportunity to petition the Government for redress of her grievances, particularly given her mental illnesses. This violates her ability to pursue her immigration case.

68.    For these reasons, Ms. Thelus's continued detention and transfer violates the First Amendment of the Constitution.

**COUNT FOUR**
**Violation of the Administrative Procedure Act**

69.    Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

70.    The Administrative Procedure Act ("APA") provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

71.    Under the APA, an agency's unexplained failure to follow its own rules constitutes "arbitrary" and "capricious" action. 5 U.S.C. § 706(2)(A); *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 638–39 (D. Mass. 2018).

72.    Respondent ICE has an established policy, ICE Policy Number 11022.1, which governs its transfer policies for detained noncitizens. Respondent ICE also has an established

19

directive, ICE Directive 11064.4, which governs detention and removal practices of noncitizen parents of minor children.

73.     Respondents' continued detention and transfer violates ICE Policy 11022.1 and Directive 11064.4 and is an arbitrary and capricious agency action that is in violation of APA. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 549 (2009); *see also Accardi*, 347 U.S. at 260.

74.     Because Respondents' continued detention and transfer violated the laws and procedures governing its transfer actions, their actions violate the APA. Thus, Ms. Thelus seeks, and is entitled to, declaratory and injunctive relief against Respondents in their official capacities to remedy their APA violations.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Enjoin the Petitioner's transfer out of the New England area, meaning any detention center not under the control of the Chelmsford Immigration Court, and if Respondent ICE is unable to prevent such transfer, order Petitioner's immediate release;

(4) Declare that Petitioner's detention and transfer violates the Due Process Clause of the Fifth Amendment, the APA, the INA, and the First Amendment;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately; and

(6) Grant any further relief this Court deems just and proper.

Respectfully Submitted,

/s/ Jennifer Klein
Jennifer Klein, Esq.
Eleni R. Bakst*
Committee for Public Counsel Services
6 Pleasant Street, 6th Floor
Malden, MA 02148
Telephone: (781) 338-0825
Facsimile: (781) 338-0829
Email: jklein@publiccounsel.net

* *Pro hac vice* application forthcoming

Dated: January 23, 2026

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I, Jennifer Klein, represent Petitioner, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 23rd day of January, 2026.


<u>/s/ Jennifer Klein</u>
Jennifer Klein